OPINION
Defendant-appellant Shane Crum appeals his conviction and sentence on one count of rape with a force specification in violation of R.C. 2907.02; one count of felonious sexual penetration with a force specification in violation of R.C.2907.12; and one count of gross sexual imposition in violation of R.C. 2907.05. Plaintiff-appellee is the State of Ohio.
Kayla Crum was born to Christine {McNutt} Confalone and Appellant in 1991. Christine noticed her daughter engaging in sexually inappropriate behavior in 1993 while living with appellant in Florida. When appellant and Christine moved to Ohio in 1994, Linda McNutt, Kayla's grandmother, also noticed Kayla engaging in sexual behavior. During this time period, Christine and appellant separated, but appellant visited his daughter several times a week. Kayla cried when she had to visit her father.
Christine and Kayla moved in with Christine's boyfriend, John Confalone in 1995. Kayla attempted to kiss John Confalone with her head tilted and mouth open. When asked where she had learned this behavior, Kayla indicated her father had done it to her. Christine and Confalone questioned Kayla about her father's behavior, and Kayla indicated appellant had "peed" in her mouth on several occasions. Kayla also told them appellant had put his penis in her vagina and anus.
Christine and John Confalone notified the Stark County Department of Human Services. Kayla was examined by nurse Donna Abbott at Akron Children's Hospital. Kayla was also interviewed by the Canton Police Department and psychologist David Coleman. Kayla met with Coleman five times over a period of several months. Kayla told all of the persons who interviewed her appellant had inserted his penis into her mouth, vagina, and anus.
On October 28, 1996, the Stark County Grand Jury indicted appellant on one count of rape, one count of felonious sexual penetration, and one count of gross sexual imposition. The indictment alleged a continuing course of conduct from on or about September 1, 1994 to on or about January 31, 1996 for each count.
Appellant pled not guilty to each charge in the Stark County Court of Common Pleas on November 8, 1996.
On February 20, 1997, the State filed a notice of intent to use child statements pursuant to Evid.R. 807. On March, 11, 1997, appellant filed a motion for competency and availability of the child witness. The court conducted an Evid.R. 601(A) competency hearing on March 19, 1997. At the conclusion of the hearing the court found Kayla competent to testify. Having found the child to be available and competent, the trial court did not conduct an Evid.R. 807 hearing. Appellant was not permitted to attend the hearing.
On March 24, 1997, the State amended the indictment relative to count one. A jury trial commenced on March 24, 1997. Before the inception of the trial, defense counsel moved that Donna Abbott be barred from offering a "diagnosis or impression" on the grounds that she was not qualified to offer such opinions. The court deferred ruling on the motion. During Abbott's testimony, defense counsel renewed this objection. The trial court overruled defense counsel's objection and permitted Abbott to testify that, in her opinion, Kayla Crum had been sexually abused. Abbott further testified Kayla had indicated appellant penetrated her vagina with his fingers. Kayla later testified at trial her father never sexually penetrated her with his fingers. Abbott also testified she found no physical signs of sexual abuse when she examined Kayla.
Dr. Coleman also testified at trial. He stated interviews which utilized anatomically correct dolls, as well as Kayla's own statements indicated to him Kayla had been sexually abused. He testified Kayla stated her father had penetrated her mouth, anus, and vagina with his penis. She further testified he had touched her "butt" with his tongue.
At the close of trial, the trial court instructed the jury,inter alia, that force was an element of the crime of rape and the crime of felonious sexual penetration. The court further instructed the jury on the force specifications to each count.
After the jury received its instructions, Juror 22 was removed because he indicated he recognized a relative of Christine Confalone. Juror 60 was seated in his place and given the instructions which were previously given to the rest of the jury.
On March 27, 1997, after considering the evidence and deliberating, the jury found appellant guilty on all counts. The trial court sentenced appellant to consecutive life terms of imprisonment on the charges of rape and felonious sexual penetration, and a consecutive sentence of two years on the charge of gross sexual imposition.
Appellant moved that he should not be required to register as a "sexual predator"
pursuant to R.C. 2950.09 on the grounds that this would constitute the retroactive application of law. The trial court overruled appellant's motion.
It is from these convictions and sentences that appellant prosecutes this appeal, raising the following assignments of error:
ASSIGNMENTS OF ERROR
 ASSIGNMENT OF ERROR NO. I.
 1. APPELLANT WAS DEPRIVED OF A FAIR TRIAL AND DUE PROCESS OF LAW BY THE TRIAL COURT'S ADMISSION OF ACCUSATORY HEARSAY EVIDENCE AND/OR THE TRIAL COURT'S FAILURE TO CONDUCT AN ANALYSIS OF THE CHILD'S OUT OF COURT TESTIMONY DURING THE EVID. R. 601(A) COMPETENCY HEARING AND THE CHILD'S TRIAL TESTIMONY AS WELL AS THE TESTIMONY OF THE CHILD'S TREATING PSYCHOLOGIST, RAISE QUESTIONS CONCERNING THE CIRCUMSTANCES SURROUNDING THE MAKING OF THE ACCUSATORY HEARSAY EVIDENCE IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION. (CH AT 15; IT AT148-149; 150; 151; 3T. AT 38-43; 2T. AT 98-99).
 ASSIGNMENT OF ERROR II.
 MR. CRUM WAS DENIED HIS RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL BY THE TRIAL COURT'S ADMISSION INTO EVIDENCE OF EXPERT TESTIMONY THAT THE CHILD HAD BEEN SEXUALLY ABUSED WHERE EACH EXPERT'S OPINION WAS BASED EXCLUSIVELY IN VAGUE, SUBJECTIVE PSYCHOLOGICAL PROFILES, SYMPTOMS, AND UNQUANTIFIABLE EVALUATION RESULTS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION. (2T. AT 32-87; 87-129; 5-9; 92-94).
 ASSIGNMENT OF ERROR III.
 MR. CRUM WAS DENIED HIS RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL BY THE TRIAL COURT'S INSTRUCTION TO THE JURY THAT FORCE WAS AN ELEMENT OF THE CRIME OF RAPE AND/OR THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY THAT THE CONDUCT ALLEGED TO HAVE CONSTITUTED THE CRIME OF RAPE COULD NOT BE USED TO SUPPORT A CONVICTION FOR FELONIOUS SEXUAL PENETRATION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION. (3T. AT 61; 62).
 ASSIGNMENT OF ERROR IV.
 AS THE EVIDENCE AT TRIAL RELIED UPON THE SAME CONDUCT TO SUPPORT THE OFFENSES OF RAPE, GROSS SEXUAL IMPOSITION, AND FELONIOUS SEXUAL PENETRATION AND THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THE SEPARATE AMICUS FOR EACH CHARGE, MR. CRUM SHOULD NOT BE CONVICTED AND SENTENCED FOR ALL SUCH OFFENSES PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION AND SECTION 2941.25 OF THE OHIO REVISED CODE.
 ASSIGNMENT OF ERROR NO. V.
 THE APPELLANT WAS DENIED A FAIR TRIAL, DUE PROCESS OF LAW AND HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO RAISE THE ERRORS LISTED IN ASSIGNMENT OF ERRORS ONE THROUGH FOUR IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR NO. VI.
 MR. CRUM WAS DENIED HIS RIGHTS TO A FAIR TRIAL, DUE PROCESS OF LAW, AND CONFRONTATION OF WITNESSES BY THE TRIAL COURT'S UNDUE RESTRICTION ON CROSS EXAMINATION OF THE CHILD WITNESS IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION. (1T. AT 171; 1760178; 192).
 ASSIGNMENT OF ERROR VII.
 THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SUFFICIENCY OF THE EVIDENCE THEREBY VIOLATING THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
 ASSIGNMENT OF ERROR VIII.
 THE CUMULATIVE EFFECT OF THE ERRORS AND/OR THE ACTS AND OMISSIONS OF COUNSEL DENIED APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS AND A FAIR TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR IX.
 CONSTITUTIONAL ERRORS WHICH OCCURRED AT TRIAL HAVE RESULTED IN THE PROBABLE CONVICTION OF AN INNOCENT MAN.
 ASSIGNMENT OF ERROR X.
 APPLICATION OF THE SO-CALLED SEX OFFENDER REGISTRATION ACT, R.C. 2950.01 THROUGH 2950.14, TO MR. CRUM'S CASE VIOLATES THE PROHIBITION AGAINST PASSAGE OF EX POST FACTO LAWS PROVIDED IN ARTICLE 1, SECTION 9 OF THE UNITED STATES CONSTITUTION.
 ASSIGNMENT OF ERROR NO. XI.
 MR. CRUM WAS DENIED HIS RIGHTS TO A FAIR TRIAL, DUE PROCESS OF LAW, AND EFFECTIVE ASSISTANCE OF COUNSEL BY THE ADMISSION OF TESTIMONY THAT THE CHILD HAD DEMONSTRATED SEXUAL BEHAVIOR WITH SAC DOLLS WHERE NO EVIDENCE WAS PRESENTED TO ESTABLISH THAT THE USE OF SAC DOLLS IS ENDORSED BY MEMBERS OF THE SCIENTIFIC COMMUNITY, AND/OR THAT THE PROPER PROTOCOL FOR THE USE OF SAC DOLLS WAS FOLLOWED IN THIS CASE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLES I, SECTION 10 OF THE OHIO CONSTITUTION. (2T. AT 43-45).
 I.
In his first assignment of error, appellant contends the trial court erred in admitting statements allegedly made by Kayla to Nurse Abbott pursuant to Evid.R. 803(4) without first conducting an inquiry into Kayla's competency at the time she spoke to Abbott. Furthermore, appellant contends the inconsistencies between Kayla's testimony in court and the statements allegedly made to Abbott constitute circumstances which bar admission of the hearsay statements under State v. Boston
(1989), 46 Ohio St.3d 108, 121.
The trial court has broad discretion to determine whether a declaration should be admissible as a hearsay exception. State v.Rohdes (1986), 23 Ohio St.3d 225, 229; State v. Duncan (1978),53 Ohio St.2d 215. Therefore, we will not disturb a trial court's evidentiary ruling unless we find the court abused its discretion; i.e. unreasonable, arbitrary or unconscionable, State v. Adams
(1980), 62 Ohio St.2d 151, 157.
Abbott's testimony concerning Kayla's alleged statements was admitted under Evid.R. 803(4). Evid.R. 803(4) allows the admission of statements made in order to further medical treatment or diagnosis. Evid.R. 803(4) states, in pertinent part:
 Statements made for the purposes of medical diagnosis or treatment and describing medical history, past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment [shall be excepted from the hearsay rule].
Statements which are admissible under Evid R. 803(4) are assumed to be reliable since the effectiveness of treatment often depends upon the accuracy of the information related to the physician. Boston, supra.
However, when the patient is a young child, it is not at all certain the child understands the need to be truthful to medical personnel. State v. Dever (1992), 64 Ohio St.3d 401. Consequently, in State v. Dever, supra, the Ohio Supreme Court recommended, in the case of young children, courts consider the circumstances surrounding the making of statements to a medical professional before admitting those statements under Evid.R. 803(4). Id. The object of such an inquiry is to determine if the child, at the time she made the statements, was motivated by something other than the need to be truthful to her physician. Id. at 405.
However, the Court also emphasized this restriction is to be narrowly construed. Id. at 405-408. A court should exclude testimony under the Dever test only in cases where there is affirmative evidence of improper motivation. Id. at 405-409. The Court explained the standard which trial courts are permitted to apply in their evaluation of a child's credibility:
 A court should not presume, * * * that the statements are unreliable merely because there is no indisputable evidence of the child's motivation. Rather, in a case such as this, when an examination of the surrounding circumstances casts little doubt on the motivation of the child, it is permissible to assume that the factors underlying Evid.R. 803(4) are present.
 Id. at 412.
If the court finds no facts which impugn the child's motivations then the court should admit the evidence. Id. Once admitted, the credibility of the child's statements, as well as that of the medical professional, are for the finder of fact to evaluate. Id.
In the instant case, the trial court did not specifically conduct a voir dire of Kayla to determine whether her statements to Nurse Abbott were unduly influenced. However, in the past we have found the failure to conduct such a voir dire, while not desirable, is not fatal to the admissibility of evidence under Evid.R. 803(4) if the medical professionals and child are available for cross-examination. State v. Kelly (1994),93 Ohio App. 257. In this case, Kayla, Dr. Coleman, and Nurse Abbott were all cross-examined by defense counsel. 1Tr. at 100-150, 2Tr. at 20-150. Defense counsel specifically questioned witnesses on several occasions regarding any potential undue influence which might have been exercised over Kayla. 1Tr. at 20-56. Defense counsel's cross-examination revealed no evidence undue influence was exercised over the child witness. 1Tr. at 100-150, 2Tr. at 20-150.
Appellant argues the contradiction between Kayla's testimony at trial and her statements to Nurse Abbott is sufficient to indicate Kayla's testimony to Abbott should be excluded underDever. We do not interpret Dever to require evidence be excluded when there is merely the possibility its contains an error or contradiction. Rather, for the aforementioned reasons, we interpret Dever to require an affirmative demonstration of undue influence before the testimony of a child victim may be excluded. In the instant case, evidence of undue influence as in Boston andDever is not present. While a voir dire of Kayla by the court to further investigate this matter may have been desirable, the failure to conduct it is not reversible error in this case. Kelly,supra. The contradiction between Kayla's testimony and one of the statements she allegedly made to Nurse Abbott is certainly a compelling reason for the finder of fact to question the testimony of both witnesses regarding that statement. While we may have resolved the conflicting evidence differently, this does not warrant a finding the trial court committed an abuse of discretion in admitting the testimony under Evid.R. 803(4) see Dever, supra.
Accordingly, appellant's first assignment of error is overruled.
 II.
In his second assignment of error, appellant maintains the trial court erred by admitting expert testimony which was based on vague and/or subjective psychological evaluations. Furthermore, appellant contends the expert witnesses substituted their judgment for that of the trier of fact by affirming the truthfulness of the child witness' testimony. Additionally, appellant asserts the trial court erred by allowing Nurse Abbott to express her opinion to a reasonable degree of medical certainty when a nurse is not qualified to offer such an opinion.
The standard for review of a trial court's evidentiary rulings is as set forth supra.
Evidence Rules 702 and 703 provide for the admission of expert testimony.
Evid.R. 703 provides in pertinent part:
A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
Evidence Rule 703 further defines the sources from which an expert witness may draw to formulate their opinion. Evid.R. 703 states, in pertinent part:
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing.
We have previously considered the admissibility of the opinion of a treating psychologist in cases of alleged child sexual abuse in Kelly, supra. In Kelly, we held the opinion of a treating psychologist that a child has been sexually abused is admissible. Upon revisiting our decision in Kelly, we find its reasoning remains persuasive. The observations and interactions which typically form the basis for the psychologist's opinion a child has been abused fall well within the parameters set by Evid. R. 703.
In the instant case, Dr. Coleman offered testimony which was derived from his therapy sessions with Kayla Crum. These opinions were based upon Coleman's specialized experience in the field of child sexual abuse and his extensive interaction with Kayla. 2T at 34-38. While necessarily subjective, and unquantifiable, Coleman's opinions were well grounded in experience and observation. No human observation escapes subjectivity, and many are necessarily difficult to quantify effectively. The jury had the opportunity to evaluate the witness, whom the court had already recognized as an expert.
Furthermore, contrary to appellant's assertion, Dr. Coleman did not merely testify to the veracity of Kayla Crum. Rather, Coleman offered an opinion concerning whether Kayla had been sexually abused based upon his educated observations. 2Tr. at 50-60. An expert may not testify to the veracity of statements made by a child witness. Boston, supra at 108. However, a psychologist or psychiatrist who has been qualified as an expert may testify based on his observations a child's actions and statements are consistent with sexual abuse. Kelly, supra. As Dr. Coleman's testimony was based on such observations, we find its admission into evidence by the trial court to have been proper.
In the case of Nurse Abbott, however, we find the trial court's decision to admit her conclusion that Kayla Crum had been sexually abused was error. Abbott testified to a reasonable degree of medical certainty Kayla had been sexually abused. 2Tr. at 104. The portion of Abbott's testimony in question reads as follows:
Prosecutor: Miss Abbott, I'm going to ask you, based upon your education, training, and experience, do you have an opinion, based upon a reasonable degree of medical certainty, through your training as a licensed nurse practitioner have an opinion as to whether or not Kayla has been sexually abused?
Abbott: Yes, I do * * * That she has been.
Nurse practitioners may evaluate and treat patients consistent with their education, certification, and standards adopted by professional boards. R.C. 4723.151. Existing precedent confirms the propriety of allowing a nurse practitioner to testify as an expert regarding medical findings. In State v. Ramos (June 12, 1997), Cuyahoga App. No. 70129, unreported, the Eighth District Court of Appeals held a nurse practitioner's testimony regarding the sexual abuse of a child was proper since the testimony was primarily related to physical changes indicative of sexual intercourse. The Ninth District Court of Appeals held inState v. Pierce (Feb. 12, 1997), Summit App. No. 17684 a nurse practitioner may testify regarding whether a patient's physical condition is consistent with a history of sexual abuse. Nurse Abbott, however, went beyond testifying about her medical findings.
Accordingly, we find the portion of Nurse Abbott's testimony which expressed an opinion as to whether Kayla Crum had been sexually abused to have been improperly admitted in light of the absence of physical indicia of abuse. However, Abbott's testimony was cumulative, and there is ample evidence in the record apart from Abbott's general statement upon which reasonable minds could find appellant committed the crimes with which he was charged. We do not find the admission of Abbott's testimony to have been prejudicial to appellant.
Appellant's second assignment of error is overruled.
 III.
In his third assignment of error, appellant contends the trial court committed reversible error by failing to instruct the jury appellant's alleged conduct could not be used to support a conviction on charges of both felonious sexual penetration and rape unless it was proven that separate incidents occurred which met the respective statutory requirements for rape and felonious sexual penetration. Furthermore, appellant maintains the trial court erred in instructing the jury on the force specifications to the charges of rape and felonious sexual penetration because the use of force is statutorily defined as part of these crimes.
Crim.R 30 provides a party must object to any error or omission in proposed jury instructions in order to preserve the error for appeal. Crim R. 30 states, in pertinent part:
 At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.
On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.
In the instant case, defense counsel did not object to the instructions given by the trial court to the jury. Therefore, our analysis must proceed under the "plain error" doctrine embodied in Crim.R 52(B).
Crim.R 52 states, in pertinent part:
 (B) Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
In order to prevail on an appeal alleging "plain error", appellant must demonstrate to the reviewing court that but for the trial court's error, the outcome of the trial would clearly have been different. State v. Long (1978), 53 Ohio St.2d 91. In Statev. Cooperrider (1983), 4 Ohio St.3d 226, the Ohio Supreme Court discussed the application of the plain error doctrine in the context of an allegedly erroneous jury instruction. The Court stated:
 An erroneous jury instruction "does not constitute a plain error or defect under Crim.R 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, 97. Additionally, the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice.
 Id. at 227.
The trial court instructed issued the following instructions to the jury on the crime of rape:
* * * Before you can find the defendant, Shane Crum, guilty of rape, you must find beyond a reasonable doubt that as a continuing course of conduct, from on or about the 1st day of September, 1994, to on or about the 31 day of January, 1996, and in Stark County, Ohio, the defendant did engage in sexual conduct with Kayla Crum, not his spouse, the said Kayla Crum being less than 13 years of age and/or the said Shane Crum having purposefully compelled Kayla Crum to submit by force or threat of force, in violation of Ohio Revised Code Section 2907.02.
Specification to count one: In addition to this charge * * * it is specified that the said Shane Crum purposefully compelled Kayla Crum to submit to rape by force or threat of force when Kayla Crum was less than 13 years of age, in violating Section 2907.02.
3Tr. at 60-62.
The trial court instructed the jury on the crime of felonious sexual penetration as follows:
* * * Before you can find the defendant, Shane Crum, guilt of felonious sexual penetration, you must find beyond a reasonable doubt that, as a continuous course of conduct * * * the defendant did, without privilege to do so, insert a part of his body into the vaginal or anal cavity of Kayla Crum, not his spouse, the said Kayla Crum being less than 13 years of age and/or the said Shane Crum having purposefully compelled Kayla Crum to submit by force or threat of force, in violation of Ohio Revised Code 2907.12.
Specification to Court Two: In addition to this charge, it is specified that the said Shane Crum purposefully compelled Kayla Crum to submit to felonious sexual penetration by force or threat of force when Kayla Crum was less than 13 years of age, in violating section 2906.12.
3Tr. at 62-63.
The trial court issued the following instructions to the jury on the crime of gross sexual imposition:
* * * [you must find] the defendant did have sexual contact with Kayla Crum, not his spouse, the said Kayla Crum being less than 13 years of age, in violation of Ohio Revised Code Section 2907.05.
3Tr. at 64.
The trial court went on to define sexual conduct as:
* * * vaginal intercourse between a male and female and anal or fellatio between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
3.Tr. at 64.
The trial court defined sexual contact as:
 Sexual contact means any touching of an erogenous zone of another, including, without limitation, the thigh, genitals, buttock, public region or, if such person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
We will address each alleged error of the trial court separately.
First, appellant alleges the trial court erred by instructing the jury force is an element of rape and felonious sexual penetration and subsequently instructing the jury on the force specification to both charges.
In its instructions on both rape and felonious sexual penetration, the trial court clearly indicated the elements of each crime could be satisfied either by perpetration of specified acts upon an individual less than thirteen years of age, or by perpetration of specified acts through the use of force. It was not error to instruct the jury on force specifications for these crimes because appellant is charged with forcing Kayla Crum to submit to acts of rape and felonious sexual penetration when she was under thirteen years of age.
Further, we find appellant has not demonstrated that had the instruction been different, the outcome of the trial would have been different. Accordingly appellant has not demonstrated prejudice.
Second, the appellant maintains the trial court erred by not instructing the jury that the same acts could not be used to support a conviction on the charge of rape and the charge of felonious sexual penetration.
Upon review of the record, we find the trial court instructed the jury to consider each of the charges against appellant independently. 3 tr. At 69. Furthermore, the trial court's instructions clearly indicate one may commit the crime of rape or felonious sexual penetration by insertion of the penis into the vaginal cavity, but that only rape could be committed by insertion of the penis into the mouth, and only felonious sexual penetration could be committed by digital penetration of the anus or vagina. Given the allegations of both penile and digital penetration, the jury could have found appellant guilty of both felonious sexual penetration and rape based upon the instructions the trial court gave them. Therefore, we find no foundation for appellant's claim the same evidence was relied upon to prove the elements of both felonious sexual penetration and rape. Furthermore, the evidence supports the jury's verdict, and appellant has not shown the trial would have clearly had a different outcome had these instructions been given differently. We conclude the trial court did not commit plan error.
Appellant's third assignment of error is overruled.
 IV.
In his fourth assignment of error, appellant asserts the State relied upon the same conduct to support the charges of gross sexual imposition, rape, and felonious sexual penetration, and therefore appellant should not have been sentenced on all charges. Appellant maintains these sentences constitute multiple punishments for the same offense and thus are illegal.
Upon review of the trial record, we find the evidence presented at trial provides a basis for reasonable minds to conclude appellant engaged in multiple acts which could be separately classified as felonious sexual penetration, rape, and gross sexual imposition. These crimes are defined in the jury instructions given by the trial court set forth supra. The trial court instructed the jury to consider the charges and the evidence supporting each charge separately. 3Tr. at 69. This court cannot substitute our judgment for that of the jury.
Appellant's fourth assignments of error are overruled.
 V.
In his fifth assignment of error, appellant contends he was deprived of his right to a fair trial due to the ineffective assistance of trial counsel.
A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness.Lockhart v. Fretwell (1993), 113 S.Ct. 838, 122 L.Ed. 2d 180;Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3
d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. It is with this framework in mind that we address the instances of alleged ineffectiveness of counsel raised by appellant in the instant case. We will address each alleged omission by trial counsel separately.
Appellant cites five omissions by defense counsel, which he asserts comprise ineffective assistance:
1). Defense counsel did not challenge the admissibility of the opinions expressed by the State's experts.
2). Defense counsel did not object to jury instructions in which force was mentioned as both an element and specification of the crimes of rape and felonious sexual penetration.
3). Defense counsel did not object to ambiguity in the jury instructions concerning the definitions of rape and felonious sexual penetration.
4). Defense counsel did not object to the multiple consecutive sentences appellant was given.
5). Defense counsel did not request the trial court to conduct an inquiry into the circumstances surrounding the making of the accusatory hearsay statement concerning digital penetration.
As to appellant's first allegation of ineffective assistance of counsel, we have determined Dr. Coleman's testimony was properly admitted. Therefore, defense counsel's failure to object to the admission of this testimony did not fall below the level of reasonable representation. In regard to Nurse Abbott's testimony, defense counsel acted well within the guidelines of reasonable representation by objecting to the portion of nurse Abbott's testimony we found was improperly admitted. 2Tr. at 104. Furthermore, as indicated supra, we do not find this testimony to have been prejudicial to appellant.
For the reasons set forth supra, we have already determined the allegations of error relied upon to support charges two, three, and four of ineffective assistance of counsel lack merit. Therefore, defense counsel's alleged error in not raising them cannot be regarded as falling below the level of reasonable representation.
In Appellant's final allegation of ineffective assistance of counsel he maintains trial counsel failed to provide reasonable representation by not requesting the trial court to inquire into the circumstances surrounding Kayla's statement to Abbott concerning digital penetration. However, appellant has not demonstrated such a hearing would have altered the course of his trial, and so this claim of ineffective assistance of counsel must fail under he second prong of the Strickland test.
Appellant's fifth assignment of error is overruled
 VI.
Appellant challenges the trial court's restriction on cross-examination of Kayla Crum in his sixth assignment of error. Appellant contends the trial court's decision not to allow the child victim to answer the question "[d]o your mom and Johnny have other tapes they like to watch in the VCR?" 1T. at 171 and to strike the question "[s]o somebody else saw this? Christopher, your daddy, your dad's friend saw [your daddy naked in the kitchen with you]?" 1T. at 177 violated appellant's rights under the confrontation clause.
A trial court has broad discretion in reasonably restricting cross-examination in order to promote the ends of a fair and impartial trial, and to prevent the harassment of the witness.State v. Rapp, 67 Ohio App.3d 33, citing Delaware v. Van Arsdall
(1986), 475 U.S. 673. Accordingly, we will only disturb the decision of a trial court to limit cross-examination if it is demonstrated the restriction constituted an abuse of discretion.State v. Forehope (1991), 71 Ohio App.3d 435. The standard of review for abuse of discretion is as set forth supra.
Each of the questions which were disallowed by the trial court may properly have been excluded under Evid.R. 602. Evid. R. 602 provides:
 A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.
The statements which appellant contends the trial court improperly excluded called for the witness to speculate on another person's perception. In the case of the question relating to whether Christopher saw her father naked, the trial court specifically adopted this rationale for its decision to strike the question. 1Tr. at 171.
Additionally, defense counsel's question concerning whether or not Kayla's parents had video-tapes they liked to watch was sufficiently general that the trial court may rightly have excluded it as irrelevant under Evid.R. 402.
Evid.R. 402 states, in pertinent part:
 All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible.
Relevant evidence is further defined by Evid.R. 401 as follows:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
In the instant case, the question of whether Kayla's parents have video-tapes they like to watch could elicit a wide range of answers which would not aid the jury in determining the source of Kayla's knowledge concerning carnal matters. Consequently, this question was properly excluded under Evid.R. 402.
We find the trial court had a reasonable basis for excluding the questions at issue under Evid.R. 602 and 402 and; therefore, the trial court did not abuse its discretion in striking those questions. Appellant's right to confront the child witness was not violated.
Appellant's sixth assignment of error is overruled.
 VII.
In his seventh assignment of error, appellant maintains the trial court erred by allowing the jury verdict to stand when it was against the manifest weight of the evidence. Appellant contends the testimony presented at trial is vague and suspect, and thus the record does not provide a sufficient basis for the jury to conclude appellant committed acts of rape, felonious sexual penetration, or gross sexual imposition.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lose its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. State v. Thompkins (1997) 78 Ohio St.3d 380,387, citing, State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
We find no error herein.
Appellants seventh assignment of error is overruled.
 VIII.
In appellant's eighth assignment of error he contends the cumulative effect of errors committed at trial denied him a fair trial and due process of law.
The cumulative weight of many errors may justify reversal even if each individual error, examined separately, would not.State v. Demarco (1987), 31 Ohio St.3d 191, 197.
Our review of the record leads us to conclude appellant received a fair and reliable trial with process due him under the law.
Appellant's eighth assignment of error is overruled.
 IX
In appellant's ninth assignment of error he alleges constitutional errors occurred which resulted in the conviction of an innocent man. Appellant again maintains the testimony of Dr. Coleman and Nurse Abbott was improperly admitted and prejudicially effected appellant.
For the reasons set forth supra, appellant's ninth assignment of error is overruled.
 X.
In appellant's tenth assignment of error he challenges the application of Ohio's sex offender registration act (R.C. 2950.01
through R.C. 2950.14) to him on the grounds that it constitutes punishment and so violates the constitutional prohibition againstex post facto legislation.
Article I, Section 9 of the Constitution of the United States Constitution prohibits states from passing any ex post facto law.
In State v. Cook (1998), ___ Ohio St.3d ___ Ohio supreme Court held:
 R.C. 2950.09(B)(1), as applied to conduct prior to the effective date of the state, does not violate the ex post facto clause of Section 10, Article I of the United States Constitution.
 Syllabus by the court, paragraph two.
The Ohio Supreme Court reasoned the provisions are remedial in nature, de minimis, and necessary to promote the goals of the legislation.
On authority of Cook, supra, the tenth assignment of error is overruled.
 XI.
In appellant's eleventh assignment of error, he contends the trial court erred by admitting expert testimony relating to Dr. Coleman's use of sexually anatomically correct dolls (hereinafter SAC's) to assist in his evaluation of Kayla Crum because the State failed to establish the scientific validity of using such dolls. Furthermore, appellant contends he was denied the effective assistance of counsel because defense counsel did not object to the admission of this testimony at trial.
The standards of review for the admission of evidence and ineffective assistance of counsel are as set forth, supra.
Appellant suggests the use of SAC's is a "procedure, test, or experiment" within the meaning of Evid.R. 702. Evid.R. 702 is set forth, supra. Therefore, appellant argues the use of SAC's requires compliance with the conditions set forth in that section.
This court has previously permitted testimony regarding the use of SAC's as an interviewing technique for use with children who may have been sexually abused. State v. Stowers (June 20, 1994), Tuscarawas App. No. 94AP010002, unreported. However, inStowers, Appellant failed to object to the use of SAC dolls and therefore we find it necessary to inquire into the propriety of testimony based upon SAC dolls.
In Boston, supra, the Ohio Supreme Court suggested SAC dolls may pose evidentiary problems, but found no need to consider the issue because the testifying psychologist did not rely solely upon the use of SAC dolls when formulating his opinion. The Court's opinion is not as clearly opposed to the use of SAC dolls as appellant suggests, but rather makes clear only the Court did not intend to rule on the admissibility of SAC dolls in resolving the case at hand. The Court stated:
 We recognize that many professionals criticize the use of SAC dolls in the diagnosis of sexual abuse. They assert that there is no consistent interview format associated with the use of SAC dolls. Also, they claim that there is little or no comparison data describing the response of non-abused children to SAC dolls as compared to the response of abused children. In this case, since Dr. Lord had other evidence of the alleged abuse, we need not decide whether an expert opinion based only on the child's manipulation of SAC dolls is reliable.
 Boston, Id. at 120, n. 8
A situation analogous to Boston faces this Court in the instant case, we do not need to rule on the admissibility of interviews conducted using SAC dolls in our review of appellant's assignment of error. Defense counsel did not object to the admission of the portion of Dr. Coleman's testimony involving SAC dolls, and therefore the admissibility of this evidence must be evaluated in terms of the "plain error" standard which is set forth, supra. The defendant has not show the outcome of his trial would have been different had evidence derived from the use of these dolls not been admitted. Furthermore, since Dr. Coleman's testimony was based not only upon the use of the SAC's, but also upon his interviews with Kayla 2Tr. at 40-56, it is not clear the exclusion of evidence based upon the use of SAC dolls would have effected the outcome of appellant's trial.
Appellant alleges the failure of his attorney to object to the introduction of Dr. Coleman's testimony concerning SAC dolls deprived him of ineffective assistance of counsel. However, the second prong of the Strickland test, set forth supra, requires appellant to clearly demonstrate any alleged error by counsel clearly effected the outcome of his trial. As we have indicated,supra, appellant has not provided this Court with such evidence in this case.
For the above stated reasons, appellant's eleventh assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed, and the cause is remanded to the trial court for execution of sentence.
By Gwin, P.J., Hoffman, J., and Wise, J., concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark county, Ohio, is affirmed and the cause is remanded to that court for execution of sentence. Costs to appellant.